USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/9/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTONIO CHANG,

              Plaintiff,

-against-

UNITED HEALTHCARE; KIMIE WONG; MORGAN CAMPA,

              Defendants.

19-CV-3529 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Antonio Chang, proceeding *pro se*, brings this action against Defendants United HealthCare Services, Inc. ("United HealthCare"), Kimie Wong, and Morgan Campa, asserting claims for discrimination, wrongful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 *et seq.* Before the Court is Defendants' motion to (1) compel arbitration on all claims other than Plaintiff's Title VII claims against United HealthCare; (2) dismiss the Title VII claims against the individual defendants, Kimie Wong and Morgan Campa; (3) stay the action against United HealthCare pending the resolution of the arbitration; and (4) dismiss the action against the individual defendants. For the reasons that follow, Defendants' motion to compel arbitration is granted, and the action is stayed as to all three Defendants.

# FACTUAL BACKGROUND[1]

Plaintiff, a 52-year-old Korean-American man, began his employment with United HealthCare in January, 2018.[2] *See* Complaint & EEOC Charge, Dkt. 2. United HealthCare is an affiliate of UnitedHealth Group Incorporated. *See* Weedman Decl. ¶ 1. On December 2, 2017, before commencing his employment, Plaintiff electronically signed the "UnitedHealth Group Employment Arbitration Policy Acknowledgement Form." *See* Weedman Decl., Ex. A, Dkt. 15-1. The signature page states that the signatory "read and agree[s] to" the UnitedHealth Group Employment Arbitration Policy (hereinafter "Arbitration Policy"). *Id.* The Arbitration Policy states, in relevant part:

### A. STATEMENT OF INTENT

. . . . It is the intent of UnitedHealth Group that legal disputes be resolved as efficiently and amicably as possible, and that issues not resolved voluntarily through informal resolution or through the internal dispute resolution ("IDR") process be resolved through binding arbitration. Unless excluded below, legal disputes that cannot be resolved through voluntary informal resolution or the IDR process are covered under this Employment Arbitration Policy ("Policy"). This Policy is a binding contract between UnitedHealth Group and its employee. Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy . . . .

### B. SCOPE OF POLICY

This Policy creates a contract between UnitedHealth Group and employee requiring both parties to resolve employment-related disputes (except the excluded disputes listed below) that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy.

---

[1] These facts are drawn from the Complaint, the EEOC charge attached to the Complaint, Defendants' motion, and Defendants' supporting declaration and exhibits. "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment, and courts therefore consider materials outside the Complaint." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

[2] Although Plaintiff alleges his employment began on January 16, 2018, Defendants allege it began "on or about January 2, 2018." Weedman Decl. ¶ 4, Dkt. 15.

2

> UnitedHealth Group and employee mutually consent to the resolution by arbitration of all claims and controversies, past, present, or future, that employee may have against UnitedHealth Group or UnitedHealth Group may have against employee, which arise out of or relate to employee's employment, application for employment, and/or termination of employment.
>
> Employees are encouraged to exhaust the IDR process before initiating arbitration. If an employment-related dispute is not resolved through the IDR process and the dispute is based on a legal claim not expressly excluded from this Policy, any party to the dispute may initiate the arbitration process . . . .
>
> Subject to the specific exclusions below, the claims covered by the Policy include, but are not limited to . . . claims for discrimination and harassment; retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded below.
>
> Covered claims include any disputes regarding the Policy or any portion of the Policy or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable, with the exception noted in the Class and Representative Actions Waivers section below
>
> Claims excluded from mandatory arbitration under the Policy are . . . claims that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

Weedman Decl., Ex. A at A-B, Dkt. 15-1.

On December 18, 2017, Plaintiff received an offer letter from UnitedHealth Group. *See* Weedman Decl. ¶ 6 & Ex. 2. Under a section titled, "Conditions of Your Employment with United Health Group," the letter described the Arbitration Policy as follows:

> The Policy is a binding contract between you and UnitedHealth Group to resolve through arbitration all covered employment-related disputes that are based on a legal claim, and mutually waive the right to a trial before a judge or jury in court in favor of final and binding arbitration. Your agreement to be bound by the terms of the Policy is a condition of your employment. You will be required to read and electronically acknowledge in the New Employee Connect your understanding and

3

acceptance of the Policy. Your acknowledgement must be received prior to your start date.

Weedman Decl., Ex. B at 3.

Plaintiff's employment was terminated on March 13, 2019. *See* EEOC Charge, Dkt. 2; Weedman Decl. ¶ 4. Following his termination, Plaintiff filed an Internal Dispute Resolution ("IDR") Appeal Form on March 20, 2019. *See* Pl.'s Opp'n ¶ 1 & Ex. A, Dkt. 19. Plaintiff alleges that he has not received any information from Defendants about the resolution of his IDR Appeal Form. *Id.* ¶ 2.

## PROCEDURAL HISTORY

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on March 27, 2019. *See* Compl. at V, Dkt. 2 at 6. Plaintiff alleges that on April 11, 2019, he received a Notice of Right to Sue from the EEOC dated April 5, 2019. *Id.* Plaintiff filed his *pro se* Complaint on April 18, 2019. Dkt. 2. Defendants filed the motion to compel arbitration now before the Court on July 12, 2019. Dkt. 14.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides, in relevant part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted to "revers[e] centuries of judicial hostility to arbitration agreements," *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 119 (2d Cir. 1991) (citation omitted), the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "[T]his policy is founded on a desire to preserve the parties' ability to

agree to arbitrate, rather than litigate, disputes." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted). "But the FAA does not require parties to arbitrate when they have not agreed to do so." *Id.* (citation omitted).

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "In deciding motions to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229 (citation omitted). A court must therefore "consider all relevant, admissible evidence submitted by the parties and contained in pleadings" and "draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

Finally, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (*per curiam*) (citation and alteration omitted). Thus, "[c]ourts read the pleadings, briefs, and opposition papers of pro se litigants 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Rivera v. Goulart*, No. 15-CV-2197 (VSB), 2018 WL 4609106, at *3 (S.D.N.Y. Sept. 25, 2018) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

"Under the FAA, the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de. C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citations omitted). "The party moving to compel arbitration 'must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party

5

opposing arbitration to put the making of that agreement in issue.'" *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). This does not require the movant to show the "agreement would be *enforceable*, merely that one existed." *Id.* If this showing is made, "the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, No. 08 CV. 5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009).

## I. A Valid Arbitration Agreement Covers Plaintiff's ADEA, NYSHRL, and NYCHRL Claims

Defendants argue that Plaintiff agreed to arbitrate all of his claims except for his Title VII claims through his electronic acknowledgment of the Arbitration Policy. Defendants concede that Plaintiff's Title VII claims are not subject to arbitration in light of the Arbitration Policy's provision excluding "claims that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ('DoD') Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the Department of Defense ('DoD') Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims." Weedman Decl., Ex. A. The DOD Appropriations Acts, in turn, prohibit companies that contract with the federal government for an amount in excess of $1,000,000 from "enter[ing] into any agreement with any of its employees . . . that requires, as a condition of employment, that the employee . . . agree to resolve through arbitration any claim under title VII of the Civil Rights

Act of 1964." Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8116, 123 Stat. 3409, 3454-55 (2009); Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. 112-10, § 8102, 125 Stat. 38, 79 (2011). Accordingly, Defendants are not seeking an order compelling arbitration on Plaintiff's Title VII claim. Dkt. 16 at 6 n.3. Defendants nonetheless allege that "Plaintiff may elect to arbitrate his Title VI claim against UnitedHealth if he wants." *Id.*

The DOD Appropriations Acts contain no comparable provision prohibiting federal contractors from entering into arbitration agreements concerning the ADEA or state or local anti-discrimination laws. In opposing Defendants' motion to compel, Plaintiff does not contest that an arbitration agreement exists between himself and United HealthCare that covers the ADEA, NYSHRL, and NYCHRL claims he now seeks to raise before the Court. Nor would there be a valid basis for Plaintiff to argue otherwise. The Arbitration Policy clearly mandates arbitration of any claims arising from Plaintiff's employment with United HealthCare, including "claims for discrimination and harassment; retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance," except for those claims that the Arbitration Policy expressly excludes. The ADEA, NYSHRL, and NYCHRL claims are therefore covered by the express terms of the Arbitration Policy, and Plaintiff assented to these terms when he electronically signed the UnitedHealth Group Employment Arbitration Policy Acknowledgement Form.

Plaintiff argues, however, that "Defendants lack the consideration required for the enforcement of [the] arbitration clause" because they never resolved his IDR appeal. Pl.'s Opp'n ¶ 4. Effectively, Plaintiff argues that Defendants materially breached the provision of the Arbitration Policy that provides, "It is the intent of UnitedHealth Group that legal disputes be

resolved as efficiently and amicably as possible, and that issues not resolved voluntarily through informal resolution or through the internal dispute resolution ('IDR') process be resolved through binding arbitration." The Court disagrees. Neither this provision, nor any other provision in the Arbitration Policy, requires Defendants to resolve IDR appeals before filing a motion to compel arbitration. The quoted provision provides that any issue that is not resolved "voluntarily" through IDR must be resolved through arbitration (as opposed to through litigation), but creates no requirement that a party moving to compel arbitration must first exhaust the IDR process. The word "voluntarily" must be afforded its plain meaning—that IDR is, in fact, an optional step prior to arbitration. This conclusion is reinforced by the subsequent provision of the Arbitration Policy, which states, "Employees are encouraged to exhaust the IDR process before initiating arbitration. If an employment-related dispute is not resolved through the IDR process and the dispute is based on a legal claim not expressly excluded from this Policy, any party to the dispute may initiate the arbitration process." Weedman Decl., Ex. A. Again, the Arbitration Policy provides that IDR is "encouraged," not "required." Nor does the Arbitration Policy provide that UnitedHealth is prohibited from moving to compel arbitration if an employee elects to begin the IDR process but commences litigation before any resolution of his or her IDR complaint. Accordingly, the Court concludes that Plaintiff's ADEA, NYSHRL, and NYCHRL claims are subject to a mandatory arbitration provision.

## II. Plaintiff Has Failed or Refused to Arbitrate

So long as there is a valid obligation to arbitrate, which the Court has found, the remaining question is "whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL*, 390 F.3d at 198. A "party has refused to arbitrate if it 'commences litigation or is ordered to arbitrate th[e] dispute . . . and fails to do so.'" *Id.* By initiating this action, Plaintiff has refused to arbitrate.

8

In sum, the Court concludes that Plaintiff has an obligation to bring his ADEA, NYSHRL, and NYCHRL claims against Defendants in arbitration. *See Lapina*, 86 F. Supp. 3d at 283-84 ("[A] party who 'signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes[.]'"). Defendants' motion to compel arbitration on those claims is thus granted.

### III. Plaintiff's Title VII Claims Against Kimie Wong and Morgan Campa are Dismissed

Next, Defendants seek dismissal of Plaintiff's Title VII claims against the individual defendants, Kimie Wong and Morgan Campa. "Title VII does not impose liability on individuals." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). Accordingly, Defendants' motion to dismiss the Title VII claims against the individual defendants is granted. This dismissal, however, has no effect on Plaintiff's pending ADEA, NYSHRL, and NYCHRL claims against the individual defendants.

### IV. The Action is Stayed Pending Arbitration

Lastly, Defendants seek a stay of the claims against UnitedHealth and dismissal of the claims against the individual defendants. The Court concludes that a stay of this action against all Defendants is appropriate pending the resolution of the arbitration.

The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015), the Second Circuit made clear that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." 794 F.3d at 347. *Katz* did not explicitly address whether the FAA requires a district court to stay all proceedings where, as here, fewer than all claims have been referred to arbitration. *See id.* at 345 n.6. Prior to *Katz*, however, the Second Circuit had stated that "[t]he decision to

9

stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987); *see also, e.g., White v. Cantor Fitzgerald, L.P.*, 393 F. App'x 804, 808 (2d Cir. 2010) (summary order) ("[T]he district court is not required to stay the litigation of the nonarbitrable claims before it . . . pending the outcome of any arbitrated claims."); *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987) ("[W]e have previously allowed courts great discretion in staying nonarbitrable state and federal claims pending arbitration of related claims.").

Thus, whether or not the FAA requires a stay where some but not all claims are subject to mandatory arbitration, a district court may stay proceedings in its discretion. "[D]istrict courts . . . may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *WorldCrisa v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997). "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-CV-8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Winter Inv'rs, LLC v. Panzer*, No. 14-CV-6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015); *see also Moore v. Interacciones Glob., Inc.*, No. 94-CV-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants."). "In such cases, a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect

over some or all of the claims not subject to arbitration." *Panzer*, No. 14-CV-6852 (KPF), 2015 WL 5052563, at *11; *see CBF Indùstria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration." (citation omitted)).

Here, the only remaining claims against the individual defendants are subject to arbitration, but both arbitrable and non-arbitrable claims remain pending against UnitedHealth. It is unclear, at this juncture, whether Plaintiff will elect to arbitrate his Title VII claims against UnitedHealth or whether he will choose to litigate them in this Court. Irrespective of which course of action Plaintiff elects, the Court will stay the proceedings on all of Plaintiff's claims pending the resolution of the arbitration. There is significant factual overlap between Plaintiff's Title VII, NYSHRL, and NYCHRL claims. Accordingly, a stay of Plaintiff's Title VII claims—in addition to his ADEA, NYSHRL, NYCHRL claims that are subject to mandatory arbitration—will avoid piecemeal litigation and lead to a more expeditious, economical resolution of the dispute.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration of Plaintiff's ADEA, NYSHRL, and NYCHRL claims is granted, Plaintiff's Title VII claims against the individual defendants are dismissed, and this case is stayed. No later than April 10, 2020, the parties shall submit a joint letter informing the Court as to whether Plaintiff intends to arbitrate his Title VII claims against UnitedHealth.

SO ORDERED.

Dated: March 9, 2020
New York, New York

Ronnie Abrams
United States District Judge